UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MASON TENDERS DISTRICT COUNCIL OF  :
GREATER NEW YORK, on behalf of     :
itself and its constituent, LOCAL  :
78 of the LABORERS' INTERNATIONAL  :
UNION OF NORTH AMERICA             :
                                   :
                 Plaintiff,        :
                                   :
            -against-              :
                                   :
G & C CONSTRUCTION SAFE, INC.,     :
GREEN SOLUTIONS ENVIRONMENTAL LLC, :
and EDGAR BASTIDAS                 :
                                   :
                 Defendants.       :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/8/11

**REPORT & RECOMMENDATION**

**10 Civ. 3399 (JGK)(MHD)**

**TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:**

Plaintiff Mason Tenders District Council of Greater New York ("Mason Tenders") commenced this lawsuit pursuant to Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185, to enforce the terms of a collective bargaining agreement ("CBA") signed by defendant Edgar Bastidas in his capacity as President of defendant G&C Construction Safe, Inc. ("G&C"). Mason Tenders alleged that Bastidas, as the owner and principal of G&C, violated the CBA when he founded defendant Green Solutions Environmental, LLC ("Green Solutions") and began performing work covered by the CBA through Green Solutions rather than G&C. Mason Tenders now seeks a judgment declaring: (1) that G&C and Green

1

order stating that Mason Tenders was entitled to a default judgment and referring the case to me for an inquest. (Order, July 30, 2010).

Following this referral, we conducted a pre-inquest conference on August 9, 2010 at which plaintiff was ordered to serve and file all papers, including affidavits, addressing the factual and legal basis for any award of damages by September 9, 2010. Plaintiff submitted a memorandum and exhibits on September 8, 2010, but failed to provide affidavits. In view of this omission, we reset the schedule, directing that plaintiff provide the required affidavits by October 20, 2010 and that defendants respond by October 27, 2010. (Order dated Oct. 13, 2010) Plaintiff timely filed supporting affidavits, and defendants unsurprisingly failed to respond.

Based on plaintiff's submissions, we now recommend entry of a default judgment declaring that Green Solutions is G&C's alter ego, that the use of Green Solutions on job-sites covered by the CBA violated the CBA, and that plaintiff is entitled to $50,429.20 in damages for lost wages and fringe benefit contributions. We further recommend that Bastidas be held personally liable for violations of

3

the CBA. In the absence of any current request for injunctive relief and the absence of any proffer with regard to attorney's fees, we decline to recommend such relief at this time.

I. <u>Analysis</u>

In the wake of defendants' default, we must accept as true the well-pleaded allegations of the complaint that are pertinent to liability. <u>See</u> <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir. 2009) (citing <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981)). We therefore rely on the factual allegations of the complaint as well as the additional declarations filed by plaintiff containing pertinent factual allegations. <u>See</u>, <u>e.g.</u>, <u>Tamarin v. Adam Caterers, Inc.</u>, 13 F.3d 51, 54 (2d Cir. 1993); <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)). We are required, however, to determine whether those factual allegations, if deemed true, establish liability. <u>Finkel</u>, 577 F.3d at 84 ("[A] district court retains discretion [on default] . . . to require proof of necessary facts, and need not agree that the alleged facts constitute a valid cause of action.") (quoting <u>Au Bon Pain Corp.</u>, 653 F.2d at 65). Furthermore, we do not automatically

4

accept the allegations of the complaint relating to damages. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Instead, the plaintiff must establish damages through pertinent evidence, such as affidavits or live testimony, ensuring "that there was a basis for the damages specified in the default judgment." See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. Conti Commodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

The well-pleaded allegations of the complaint and the supporting affidavits submitted by Mason Tenders during this inquest amply establish that G&C violated its CBA with the plaintiff by forming Green Solutions and doing business through it, and that plaintiff is entitled to damages from defendants G&C, Green Solutions, and Bastidas in the form of lost wages and benefit contributions. We first address the facts establishing that defendant Green Solutions is bound by the CBA and liable for breaching it, and then turn to the issue of Bastidas' liability. Finally, we assess damages for the breach and briefly address the question of fees and possible injunctive relief.

A. <u>Background</u>

Mason Tenders is a "labor organization" within the meaning of
29 U.S.C. § 152(5). (Compl. at ¶ 2). Defendants G&C and Green
Solutions are "employers" in an industry affecting commerce within
the meaning of 29 U.S.C. § 152(2). (Compl. at ¶¶ 3,4). Defendant
Bastidas is the president and owner of G&C as well as the director
and owner of Green Solutions, and the address listed as Green
Solutions' principal place of business is the same as Bastidas'
home address. (Compl. at ¶ 5).

Sometime in May of 2007, Bastidas, on behalf of G&C, and Mason
Tenders, on behalf of Laborers Local 78 of the Laborers'
International Union of North America ("Local 78"), executed the
CBA. (Compl. at ¶ 8). The CBA was originally effective through
November 30, 2007, but automatically renewed itself "unless either
party . . . give[s] written notice to the other of its desire to
modify, amend, or terminate [the CBA] on its expiration date." (<u>Id.</u>
(quoting CBA at Art. XVI, Section 1)).[1] Since defendants have never
notified Mason Tenders of their intent to terminate the CBA (<u>id.</u>),

---

[1] The CBA was submitted by Mason Tenders as Exhibit A to the
June 29, 2010 Declaration of Eli Kent, Director of Organizing of
Local 78 ("Kent Decl.").

it continues to bind G&C. (<u>Id.</u>).

Work covered by the CBA includes "the removal, abatement, encapsulation or decontamination of asbestos, lead, mold, or other toxic or hazardous waste" material. (CBA at Art. IV, Section 1). Among other things, the CBA sets forth minimum wage rates for all employees working under it, requires the employer to make hourly contributions, on behalf of all employees working under the contract, to various fringe benefit funds, and sets the hourly contribution rates. (Compl. at ¶¶ 9, 10; CBA at Arts. VII-VIII). The CBA also requires that all individuals employed to perform covered work be members in good standing of Local 78 of the Laborers' International Union of North America ("Local 78") (CBA at Art. III, Section 1), and states that "[i]f the Employer or any of the Employer's owners forms or acquires . . . an ownership interest in another company performing bargaining unit work . . . this Agreement shall cover such other company, and the Employer and such other company shall be jointly and severally liable for each other's obligations under this Agreement." (CBA at Art. II, Section 5). The CBA contains a provision whereby the "person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement . . . ." (CBA at Art. XVI, Section 4) (bold and italicized in

7

original). The CBA was signed on behalf of G&C by defendant Bastidas, who is listed on the signature page as President of G&C. (CBA at p. 26).

At some point -- presumably, after signing the CBA, but certainly no later than January of 2010 (See Kent Decl. at ¶ 10, Ex. B) -- Bastidas began doing business through Green Solutions. G&C and Green Solutions share a common business purpose as environmental contractors abating asbestos, lead and/or other hazardous waste. (Compl. at ¶ 13). Public records show that the telephone number for Green Solutions listed with the New York State Department of Labor is registered to the address listed as the office of G&C. (Compl. at ¶ 15). Moreover, the business address of Green Solutions is the same address listed in public records as Bastidas' personal address. (Compl. at ¶ 16). Bastidas is identified as an owner and officer of both companies. (Id. at ¶¶ 5, 13). The two companies do not maintain independent client lists, staff, assets or other business relations. (Compl. at ¶ 18).

Since commencing covered work through Green Solutions, Bastidas has not utilized G&C to perform any such work and has let G&C's license to perform asbestos abatement in New York lapse.

(Compl. at ¶ 14, Kent Decl. at ¶ 9). Meanwhile, Green Solutions has performed -- and possibly continues to perform -- asbestos abatement work on at least seven job sites in the greater New York City metropolitan area in 2010 alone, according to records filed with the State of New York. (Kent Decl. at ¶ 10, Ex. B). Despite performing asbestos abatement in New York, Green Solutions has never registered with the New York Secretary of State, and the phone number provided to the New York State Department of Labor in connection with its license to perform asbestos remediation work is not operational. (Compl. at ¶ 17).

Asbestos remediation contractors are required to file notification with the New York State Department of Labor for every job performed. (Decl. of Jorge Roldan, Apprentice Coordinator with Mason Tenders ("Roldan Decl."), at ¶ 3). These reports list, among other things, the type and amount of asbestos to be remediated and the duration of the job. (Id.). Mason Tenders has submitted copies of seven State Asbestos Reports filed by Green Solutions. (Id. at Ex. A; see also Kent Decl. at Ex. B). Based upon a review of these documents and his own experience, Roldan declares that at least 1,112 man-hours would be needed to complete the asbestos remediation work listed on these reports. (Roldan Decl. at ¶ 4).

Plaintiff has provided copies of the Mason Tenders wage and benefit schedule for the time period in which these jobs were performed. (Id. at ¶ 5, Ex. B). According to these documents, the equivalent rate of pay for an asbestos worker performing work under the CBA would be $45.35 (id. at ¶ 5, Ex. B), consisting of a $31.50 hourly wage and $13.85 in fringe benefit contributions. (Id. at ¶ 5, Ex. B). This hourly rate, when applied to Roldan's calculation that it would require 1,112 man-hours to complete the asbestos abatement projects performed by Green Solutions, yields a total of $50,429.20 in wages and fringe-benefit contributions that would have been received by union workers and the benefit funds had the union members been hired under the CBA to perform those projects. (Id. at ¶ 5).

We examine the affidavits and the well-pleaded allegations of the complaint to determine whether they establish that G&C, Green Solutions, and Bastidas are in fact liable for damages in that amount.

1. "Single Employer" and "Alter Ego" Analysis

Only G&C (through Bastidas in his capacity as its President)

10

is a signatory to the CBA. We must therefore first examine whether
Green Solutions may be held liable for breaching the CBA. "[A]
collective bargaining agreement may be enforced against non-
signatory employers if the employers constitute a "single employer"
and if the employees of the companies constitute a single
appropriate bargaining unit." Brown v. Sandimo Materials, 250 F.3d
120, 128 n.2 (2d Cir. 2001) (citing Lihli Fashions Corp., Inc. v.
NLRB, 80 F.3d 743, 747 (2d Cir. 1996)). "A 'single employer'
situation exists 'where two nominally separate entities are
actually part of a single integrated enterprise so that, for all
purposes, there is in fact only a 'single employer.'" Clinton's
Ditch Co-op Co., Inc. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985)
(quoting NLRB v. Browning Ferris Industries of Pennsylvania, Inc.,
691 F.2d 1117, 1122 (3d Cir. 1982)). In determining whether this
situation exists, the Second Circuit looks to four factors, "none
of which is controlling and not all of which need be present."
Brown, 250 F.3d at 128 n.2 (citing Lihli Fashions Corp., 80 F.3d at
747). These factors are "[1] interrelation of operations; [2]
common management; [3] centralized control of labor functions; and
[4] common ownership. Family connections and the common use of
facilities and equipment are also relevant." Id. (citing Lihli
Fashions Corp., 80 F.3d at 747). "Ultimately, single employer
status depends on all the circumstances of the case and is

11

characterized by absence of an 'arm's length relationship found among unintegrated companies.'" Lihli Fashions Corp., 80 F.3d at 747 (quoting NLRB v. Al Bryant, Inc., 711 F.2d 543, 551 (3d Cir. 1983)).

The alter-ego doctrine is essentially identical to the single-employer rule in terms of its effect, "provid[ing] an analytical hook to bind a non-signatory to a collective bargaining agreement." Truck Drivers Local Union No. 807, I.B.T. v. Regional Import & Export Trucking Co., 944 F.2d 1037, 1046 (2d Cir. 1991); see also Lihli Fashions Corp., 80 F.3d at 748 ("If two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other") (citing Howard Johnson Co. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 259 n.5 (1974)). It is, however, "conceptually distinct" from the single-employer rule, and instead focuses on "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." Lihli Fashions Corp., 80 F.3d at 748 (quoting Truck Drivers Local, 944 F.2d at 1046).

A comparison of this case with Lihli Fashions Corp. reveals

12

that Green Solutions is the alter ego of G&C, though the two corporations are not a single employer. In Lihli Fashions Corp., the appellants were four corporations: Lihli Fashions Corporation, Inc. ("LFC"), King Kuo International Enterprises, Inc. ("King Kuo"), Liyan International, Inc. ("Liyan"), and Lihli, Inc. ("Lihli"). 80 F.3d at 745-46. LFC and King Kuo together "manufactured expensive women's clothing under an exclusive contract with the famous designed, Adolfo." 80 F.3d at 746. The two companies were both owned and managed by Lihli Hsu, who was the president and chief operating officer of both entities. Id. Both companies had a CBA with the local affiliate of the International Ladies Garment Workers Union. Id. "In early 1993, Adolfo announced his retirement." Id. At that time, both LFC and King Kuo ceased operations, but rather than leave the clothing business with her patron, Ms. Hsu began designing her own line of women's clothing (which was similar to that previously designed by Adolfo), and formed two new corporations, Lihli and Liyan, to manufacture and market the new line. Id. Liyan manufactured the clothes, and Lihli sold and marketed them. Id. Upon forming Lihli and Liyan and closing LFC and King Kuo, Ms. Hsu informed her workers' union that their CBA had been terminated, and the union sued to enforce the agreement under both the single-employer and alter-ego theories. Id.

13

The NLRB found that Lihli and Liyan were a single employer, and that the two new companies were alter egos of the then-defunct LFC and King Kuo. Id. (citing Lihli Fashions Corp., 317 N.L.R.B. 163, 1995 WL 255650 (N.L.R.B. Apr. 28, 1995)). On appeal to the Second Circuit, the companies conceded that Liyan -- which carried on the business of manufacturing clothing -- was the alter ego of LFC and King Kuo, but argued that Lihli -- which began a new sales and marketing business -- was neither the alter ego of LFC and King Kuo nor a single employer with Liyan. Id. Ultimately, the court found that Lihli and Liyan were a single employer, but that (1) the employees of the two companies did not constitute an appropriate single bargaining unit, and so Lihli was not bound by the CBA; and (2) Lihli was not an alter ego of LFC and King Kuo, as it assumed a function that had been performed exclusively by Adolfo before his retirement. Id. at 748-49.

The crucial fact for our analysis is that neither the Second Circuit nor the NLRB seems to have even considered the possibility that the newly created corporations held single-employer status with the dissolved corporations. In fact, the very nature of the single-employer rule strongly implies that all companies alleged to constitute a single employer must actively employ workers. On the other hand, it is clear from Lihli Fashions Corp. and numerous

14

other cases that an active corporation may share alter-ego status
with a dissolved corporation. Id. at 749; see also, e.g., Goodman
Piping Prods., Inc. v. NLRB, 741 F.2d 10 (2d Cir. 1984).


     The facts submitted by plaintiff show that defendants G&C and
Green Solutions share a common business purpose, telephone number,
and client-base, and that they are both owned and directed by
Bastidas. Furthermore, it appears that Bastidas ceased performing
asbestos remediation work as G&C (in fact, that he allowed G&C's
license to do such work to lapse), and formed Green Solutions to
take over G&C's business. While we cannot say that the two
companies are a single employer, given that the facts submitted by
Mason Tenders appear to show that G&C is defunct, we have little
trouble in concluding that Bastidas attempted to avoid G&C's
obligations under the CBA by creating Green Solutions and using it
to perform covered work. We therefore recommend that the district
court enter judgment declaring that Green Solutions is the alter
ego of G&C and is bound by the terms of the CBA.


     The facts here further indicate that G&C has avoided its
obligations under the CBA by operating as Green Solutions on at
least seven job sites. At these job sites, Green Solutions

15

performed asbestos remediation work, which is work covered by the
CBA. Green Solutions and G&C therefore violated the CBA by failing
to employ members in good standing of Local 78 and by failing to
pay union wages and benefits for those workers. Based upon these
facts, we further recommend that the court enter judgment declaring
that the use of Green Solutions to perform covered work on listed
job-sites violated the CBA, and that G&C and Green Solutions are
jointly and severally liable for the resulting damages (see CBA at
Art. II, Section 5).


2. Bastidas' Personal Liability


Plaintiff also claims that Bastidas, by signing the CBA,
agreed to be held personally liable for any violations. The short
answer is that Bastidas has admitted by his default the well-
pleaded allegations of the complaint as pertain to his personal
liability. See Finkel, 577 F.3d at 84 (citing, inter alia, Au Bon
Pain Corp., 653 F.2d at 65). Plaintiff's complaint includes the
allegation that "[d]efendant Bastidas executed the independent CBA
*in his individual capacity and is personally liable for all debts
of* . . . G&C and Green Solutions." (Compl. at ¶ 24 (emphasis
added)). This allegation is sufficient to establish Bastidas'

16

liability on default. In any event, upon examination of the
evidentiary record, we find that it suffices to establish Bastidas'
personal liability for breach of the CBA.


"Although Federal law governs disputes arising under Section
301 of the LMRA, 'state law, if compatible with the purpose of [the
LMRA], may be resorted to in order to find the rule that will best
effectuate the federal policy." Mason Tenders Dist. Council of
Greater New York v. Cheromin, Inc., 2009 WL 1024256, at *3
(S.D.N.Y. Apr. 13, 2009) (quoting Mason Tenders Dist. Council
Welfare Fund v. Thomsen Constr. Co., 301 F.3d 50, 53 (2d Cir. 2002)
(brackets in original)). "Accordingly, Courts in this jurisdiction
resort to New York law to resolve the question of whether a [CBA]
imposes personal liability on a signatory. Id. (citing, inter alia,
Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35
F.3d 29, 35 (2d Cir. 1994)). "In order to impose personal liability
on a signatory to a collective bargaining agreement under New York
law, there must be 'clear and explicit evidence of the defendant's
intent to add personal liability to the liability of the entity.'"
Cheromin, 2009 WL 1024256, at *3 (quoting Thomsen Constr. Co., 301
F.3d at 53). To find such intent, we examine five factors: "(1) the
contract's length, (2) the location of the liability provision
relative to the signature line, (3) the presence of the name of the

17

signatory in the contract itself, (4) the nature of the negotiations leading to the contract, and (5) the signatory's role in the corporation." Thomsen Constr. Co., 301 F.3d at 53 (citing Lollo, 35 F.3d at 35).

The CBA contains a provision purporting to bind Bastidas personally. Article XVI, section 4 of the CBA states that "[t]he parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each other they were duly authorized to enter into this Agreement. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement . . . ." (CBA at Art. XVI, Section 4) (bold and italicized in original). This provision appears on the page immediately prior to the signature page, and is the last provision before the signature block. (See id. at pp. 25-26). Additionally, the line for Bastidas' signature is labeled "Signature (in his/her personal and representative capacities)" and the parenthetical phrase pointing to personal liability is bold and italicized. (Id. at p. 26). Both the signature line and the provision immediately before it clearly state that the signer would incur personal liability. Bastidas signed the CBA on behalf of G&C, and is listed as President of G&C below his signature. (Id.). Hence we find that

18

the second and fifth factors weigh in favor of finding Bastidas
personally liable for violating the CBA.


    The contract is thirty pages in length, including two
supplemental schedules. Moreover, its text never mentions Bastidas
or even G&C by name, instead referring solely to "the undersigned
Employer." (See id. at p.1). While these two factors might thus
seem to weigh against personal liability, the Second Circuit in
Lollo found the signatory personally liable based on his signature
of a fifty-five page contract that did not include the name of the
signatory anywhere except above the signature line. See 35 F.3d at
35. We therefore find that the first and third factors also weigh
in favor of personal liability for Bastidas.


    Plaintiff has not presented any evidence on the fourth factor,
the nature of negotiations leading to the contract itself. Evidence
in this regard -- that the personal liability provision "was
expressly bargained for and reached after much negotiation" -- was
a key factor in the Second Circuit's ruling on personal liability
in Lollo. Id.; compare Mason Tenders Dist. Council Welfare Fund v.
M.A. Angeliades, Inc., 2007 WL 4208587, at *14 (S.D.N.Y. Nov. 20,
2007) (declining to impose personal liability on the signatory of

19

a CBA where four of the five Lollo factors weighed in favor of
personal liability, but "no evidence was presented . . . indicating
that the personal liability provisions were negotiated or even
discussed."). Plaintiff has not, for example, shown that Bastidas
signed the contract twice (once in his representative capacity and
once in his personal capacity), as is "the nearly universal
practice" in New York "where individual responsibility is
demanded." Thomsen Const. Co., 301 F.3d at 54 (quoting Salzman Sign
Co. v. Beck, 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 57 (1961)). Nor
have they presented affidavits regarding the course of negotiations
of this contract and Bastidas' intent to be personally bound,
despite the fact that officials of Mason Tenders and Local 78 both
signed the CBA and presumably could testify regarding this matter.
(See CBA at p. 26). We note, however, that plaintiff's failure to
present evidence on this point is at least in part, and perhaps in
whole, due to Bastidas' default. By that default Bastidas waived
his right to present evidence about the course of negotiations that
might tend to weigh against his personal liability, and he
presumably was not available to testify about those negotiations.
Hence, plaintiff had no reason to proffer evidence of the course of
negotiations. Accordingly, we find that the fourth factor also
weighs in favor of holding Bastidas personally liable for violating
the CBA, and we recommend that the district court enter judgment

20

for plaintiff in this regard. We further recommend that the district court hold Bastidas jointly and severally liable with G&C and Green Solutions, as per the terms of the CBA pertaining to the nature of the signatory's liability for any breach. (See CBA at Art. II, Section 5 and Art. XVI, Section 4).

### 3. Damages

"It is well established that a union may recover wages claimed by its members pursuant to the terms of a [CBA]." Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Construction Inc., 521 F.Supp. 2d. 316, 318 (S.D.N.Y. 2007) (citing Int'l Union v. Hoosier, 383 U.S. 696, 699-700 (1966)). Here, Mason Tenders claims not that its own workers were underpaid, but that defendant Green Solutions hired non-union workers to perform covered work in violation of the CBA. (See Roldan Decl. at ¶¶ 3-5). Accordingly, plaintiff seeks compensation in the form of wages and fringe-benefit contributions that should have been paid to union members on these job sites.

In a similar case, this court awarded monetary damages equal to the total of the estimated wages and benefits that would have

21

been paid to unspecified union employees who should have been, but were not, employed on certain projects covered by a collective bargaining agreement. <u>Termon Construction</u>, 521 F.Supp. 2d. at 318. In <u>Termon Construction</u>, the defendant breached a collective bargaining agreement with the plaintiff "by failing to use [union members] at identified job sites." <u>Id</u>. at 317-318. Judge Holwell held that the union was entitled to not only the wages that the defendant would have paid union workers had it hired them in accordance with the CBA, but also the benefit contributions that the defendant would have been obligated by the CBA to make on its employees' behalf. <u>Id.</u> at 318. The award of these wages and benefits was "to be distributed to union members and shop stewards who were on the Union's out-of-work list during the relevant time periods . . . subject to further order of the Court authorizing payments to identified union members." <u>Id</u>. at 318. As in <u>Termon Construction</u>, we find plaintiff's estimate of unpaid wages and benefits to be reasonable, and recommend that the court award plaintiff damages in the amount of $50,429.20, with $15,401.20 of that amount directed to plaintiff's fringe benefits funds in accordance with Exhibit B of the Roldan Declaration, and $35,028.00 to be distributed as wages to union members and shop stewards who were on the union's out-of-work list during the relevant time periods.

22

"Because the LMRA is silent with respect to a prejudgment interest rate, the 'common practice' among courts within this Circuit is to grant interest at a rate of 9% per annum under New York State law." Local 335, United Service Workers Union, IUJAT v. Roselli Moving & Storage Corp., 2010 WL 3283553, at *3 (E.D.N.Y. July 20, 2010) (citing Serv. Employees Int'l Union v. Stone Park Assocs., LLC, 326 F.Supp.2d 550, 555-56 (S.D.N.Y. 2004) and N.Y. C.P.L.R. §§ 5001-5004); see also Termon Construction, 521 F.Supp. 2d. at 319. This interest is to be computed

> from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). "The 'earliest possible date' in contract actions arises when the alleged breach occurred, regardless of the parties' state of mind or subsequent discussions." McNally Wellman Co., a Div. of Boliden Allis, Inc., v. New York State Elec. & Gas Corp., 63 F.3d 1188, 1200 (2d Cir. 1995) (citing Sobiech v. Int'l Staple & Mach., 867 F.2d 778, 781 (2d Cir. 1989)). Here, however, there is not a single date upon which the breach occurred, as the contract was breached each time Green Solutions performed covered work using non-union labor. Plaintiff's submissions regarding Green Solutions' performance of covered work show seven projects, none of

23

which began earlier than January 20, 2010, and none of which ended later than July 30, 2010. We therefore recommend that the district court direct the Clerk of the Court to calculate prejudgment interest at a rate of 9% simple interest per annum dating from the "single reasonable intermediate date," N.Y. C.P.L.R. § 5001(b), of April 15, 2010 to the date upon which judgment is entered.


### 4. Attorney's Fees


In the complaint, plaintiff also requested costs and fees, including "reasonable attorney fees." (Compl. at p.7, ¶ D). "In this Circuit, parties seeking an award of attorney's fees are required to submit contemporaneous time records." Local 335, 2010 WL 3283553, at *2 (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff has submitted no such records, and it is not even clear that it is seeking such an award at this inquest. We therefore do not recommend that the court grant plaintiff attorney's fees. (See Order, Oct. 13, 2010).


### 5. Injunctive Relief


A court may "issue an injunction on a motion for default

24

judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Local 348 Health & Welfare Fund v. Milmar Food Group, LLC, 2006 WL 1025075, at *6 (E.D.N.Y. Mar. 24, 2006) (quoting King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996)).

In plaintiff's complaint, it asked for an injunction, but it has not addressed the issue at this inquest, much less proffered the necessary evidence. The power of the district courts to issue injunctive relief under § 301 of the LMRA is limited by the Norris-LaGuardia Act, which generally prohibits the issuance of injunctions in "labor disputes." See 29 U.S.C. §§ 101, 104, 113. Moreover, these provisions limit the issuance of injunctions against employers in certain circumstances. See, e.g., Niagara Hooker Employees Union v. Occidental Chem. Corp., 935 F.2d 1370, 1376-80 (2d Cir. 1991). We need not examine whether this prohibition applies to the present case, however, since even when courts have found the authority to issue injunctive relief despite Norris-Laguardia, they have applied the traditional requirement that the party seeking injunctive relief must show both the absence of an adequate remedy at law and irreparable harm. See, e.g., Boys Markets, Inc. v. Retail Clerks, 398 U.S. 235, 254 (1970); Niagara

25

Hooker, 935 F.2d at 1377-78; LaBarbera v. Rockwala Inc., 2007 WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007); Milmar Food Group, LLC, 2006 WL 1025075, at *6; Mingoia v. Crescent Wall Systems et al., 2004 WL 1885952, at *6 (S.D.N.Y. Aug. 23, 2004). Irreparable harm is "injury for which a monetary award cannot be adequate compensation." Robins v. Zwirner, 713 F.Supp.2d 367, 374 (S.D.N.Y. 2010) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Applying this test, we find that plaintiff has failed to establish that it is entitled to injunctive relief.

Aside from pointing out defendant's failure to respond to the complaint, plaintiff's submissions on this inquest do not address their request for an injunction. Plaintiff has provided no evidence or supporting documentation demonstrating either irreparable harm or the absence of an adequate remedy at law. Indeed, its detailed submission regarding the monetary damages to which each breach of contract entitles it strongly suggests that its remedies at law are adequate. Hence, even were we to find that plaintiff had not waived its request for an injunction, we would find that it has failed to establish irreparable harm and recommend denial of the request for

injunctive relief on that basis.[2]

CONCLUSION

For the reasons noted, we recommend that the court enter a judgment in plaintiff's favor declaring that (1) Green Solutions is the alter ego of G&C; (2) the use of Green Solutions to perform covered work violated the CBA; (3) Bastidas is personally liable for breach of the CBA; and (4) plaintiff is entitled to $50,429.20 in damages for lost wages and fringe benefit contributions, plus pre-judgment interest dating from April 15, 2010.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable John G. Koeltl, Room 1030, and to the chambers of

---

[2] In fairness, we note that our initial scheduling order referred to the submission of papers by plaintiff in support of their claim for "damages." (Order dated Aug. 9, 2010). This limitation reflects, however, the limited scope of what plaintiff's counsel indicated at the initial conference that his client was seeking. Moreover, we note that, in other respects plaintiff has submitted evidence addressing more than simply the amount of claimed damages, and indeed has endeavored to demonstrate the liability of each of the named defendants.

the undersigned, Room 1670, 500 Pearl Street, New York, New York
10007. Failure to file timely objections may constitute a waiver of
those objections both in the District court and on later appeal to
the United States Court of Appeals. See Thomas v. Arn, 470 U.S.
140, 150 (1985); Small v. Secretary of Health and Human Services,
892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ.
P. 72, 6(a), 6(e).

**Dated: New York, New York**
**February 8, 2011**


_____
**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
today to:

Bruce Steven Levine, Esq.
Cohen, Weiss and Simon, LLP
330 West 42nd Street
New York, NY 10036
(212) 356-0230
Fax: (646) 473-8230

G&C Construction Safe, Inc.
116 Pine Street
Cranford, NJ 07016

Green Solutions Environmental LLC
116 Pine Street
Cranford, NJ 07016

Edgar Bastidas
116 Pine Street
Cranford, NJ 07016

28